**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| TERESA ROSATI, | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | **Civ. No. 18-3349** |
| | : | |
| UNITED STATES OF AMERICA, et al., | : | |
| **Defendants.** | : | |

| | | |
|---|---|---|
| **Diamond, J.** | **MEMORANDUM** | **May 15, 2019** |

Plaintiff Teresa Rosati brings this negligence action under the Federal Tort Claims Act against the United States of America, the Social Security Administration, and the United States Attorney General for injuries she sustained from a slip and fall in a Social Security Office. (Compl., Doc. No. 1); 28 U.S.C. § 2671. Defendants have moved for summary judgment. (Doc. No. 16.) The matter has been fully briefed. (Doc. Nos. 20, 21.) I will grant Defendants' Motion.

## I.    LEGAL STANDARDS

I may grant summary judgment "if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must initially show the absence of any genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). An issue is material only if it could affect the suit's result under governing law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). I "must view the facts in the light most favorable to the non-moving party," and make every reasonable inference in that party's favor. Hugh v. Butler Cty. Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005). The opposing party must support each essential element with concrete record evidence. See Celotex, 477 U.S. at 322–23. If there is no genuine issue of material fact, summary judgment is appropriate. See id. at 322.

## II.     FACTUAL BACKGROUND

Plaintiff is an experienced litigant, having brought and settled another slip and fall action ten years ago and a personal injury case ten years before that. (Rosati Dep. 6–7, 27–28, Doc. No. 20-1.)  As I am obligated to do, however, I have credited Plaintiff's testimony, resolved all factual disputes in her favor, set out those record facts that are undisputed, and construed the resulting record "in the light most favorable" to Plaintiff.  Hugh, 418 F.3d at 267.  I have disregarded factual allegations that are without evidentiary support.  See Celotex, 477 U.S. at 322–23; Jones v. UPS, 214 F.3d 402, 407 (3d Cir. 2000) (requiring more than "unsupported allegations" to defeat summary judgment).

The facts are largely undisputed.  On December 21, 2017, Plaintiff went to the Social Security Administration Office in Chester, Pennsylvania to apply for spousal benefits after her husband's retirement.  (Rosati Dep. 90–91.)  It was her first time visiting the Office.  (Id. at 90.)  Around noon, Plaintiff checked in for her appointment and sat in the "crowded" waiting area until her name was called.  (Id. at 93, 95–96.)  Plaintiff then walked to a different area to process her application.  (Id. at 98–101.)

There, Plaintiff met her interviewer, Donyel Beale, and sat down in the right-side chair of two chairs in a cubicle area that had partitions on either side, facing a countertop (behind which Beale sat).  (Id. at 101–04, 107–09; Beale Dep. 56, Doc. No. 20-2; Rappoport Report 3, Doc. No. 20-3.)  Because the chairs are not attached to the floor, Plaintiff's expert acknowledges that they were "movable."  (Rappoport Report 4.)  I have appended to this Memorandum the photographs of the area provided by the expert.

Plaintiff did not try to move the right chair or adjust it.  (Rosati Dep. 102–04.)  Rather, Plaintiff went around to the right of the right-side chair, near the partition, and sat down.  (Id.)

Plaintiff had "no problem" walking around the chair; there was sufficient space. (Id. at 118.) Plaintiff set her purse down on the chair to her left. (Id. at 104.) She did not move either chair during her interview. (Id. at 110.) Beale typed Plaintiff's data into her online benefits application. (Id. at 109–10.) Plaintiff also provided Beale with documents, including her birth certificate and marriage license. (Id. at 110.) Although Plaintiff could not estimate the interview's duration, she recalls that Beale's "computer was slow," and that she "eventually . . . got up to leave." (Id.)

As Rosati got up, she picked up her purse from the chair next to her and turned to her left. (Id.) She did not push her chair back, but simply turned to the left and started "maneuvering around the [left] chair" to exit between the left-side chair and the partition. (Id. at 111–15.) Plaintiff did not touch or move either chair. (Id. at 111, 134.) The space between the left partition and the left-side chair was a "tight space, but there was space to go around." (Id. at 113.) As she walked around the left-side chair, Plaintiff's "feet got tangled in the chair" and she "fell over" onto the carpeted floor. (Id. at 110–11, 113–14.) When asked how her feet got tangled, Plaintiff first said "I don't know." (Id. at 114.) Plaintiff then parroted repeatedly that her feet got "tangled" in the chair. (Id. at 115–16, 117, 118, 146.) Although Plaintiff testified that she fell on her left side, Beale testified that she fell on her backside. (Id. at 125; Beale Dep. 75.) Plaintiff acknowledged that she did not hit her head. (Rosati Dep. 125.) After Beale and a security guard helped Plaintiff get up, she sat down for "less than a minute," walked out of the Office, and drove home. (Id. at 130, 132.)

According to Plaintiff, "there wasn't enough room" in "the area where [she] had to walk out to exit": "the area between [the] desk, the countertop, and [her] seat." (Id. at 116.) Plaintiff recalls Beale telling the security guard that "the chairs were too close together." (Id. at 119–20.) Beale denies speaking to the security guard. (Beale Dep. 84–86.)

As a result of her injuries, Plaintiff charges Defendants with one count of negligence, seeking some $500,000 in damages. (Compl. ¶¶ 12–22; Claim for Damage, Ex. A to Compl., Doc. No. 1.)

## III. DISCUSSION

Defendants ask me to enter judgment in their favor because: (1) Plaintiff cannot show that Defendants created an unreasonable risk of harm; and (2) the placement of the chair over which Plaintiff tripped was open and obvious. (Mem. Supp. Summ. J. 5–9, Doc. No. 16.) I agree.

Under the FTCA, I must apply the law of Pennsylvania—the state where Plaintiff fell and sustained injury. See 28 U.S.C. § 2674; Toole v. United States, 588 F.2d 403, 406 (3d Cir. 1978) ("Since the acts or omissions upon which liability would be based took place in Pennsylvania, the law of that state governs."). To establish negligence under Pennsylvania law, Plaintiff must show:

> (1) a duty of care; (2) the breach of the duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting to the plaintiff.

Farabaugh v. Pa. Turnpike Comm'n, 911 A.2d 1264, 1272–73 (Pa. 2006) (citing R.W. v. Manzek, 888 A.2d 740, 746 (Pa. 2005)).

In Pennsylvania, a landowner owes a business invitee "a duty to protect [her] from foreseeable harm." Carrender v. Fitterer, 469 A.2d 120, 123 (Pa. 1983). "A business invitee is a 'person who is invited to enter or remain on land for a purpose directly or indirectly connected with the business dealings with the possessor of the land.'" King v. RockTenn CP, LLC, No. 13-6663, 2015 WL 2215533, at *3 (E.D. Pa. May 8, 2015) (quoting Charlie v. Erie Ins. Exch., 100 A.3d 24, 253 (Pa. Super. Ct. 2014)). A landowner is liable for the invitee's injuries due to a condition on the land only if the landowner:

> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitee, and (b)

4

should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and (c) failed to exercise reasonable care to protect them against danger.

Id. (quoting Restatement (Second) of Torts § 343A). Accordingly, "if the condition causing the injury was 'known or obvious' to the invitee, the possessor is not liable for the injuries caused unless she 'should [have] anticipate[d] the harm despite such knowledge or obviousness.'" Slappy-Sutton v. Speedway LLC, No. 18-2548, 2019 WL 1332334, at *1 (3d Cir. Mar. 25, 2019) (quoting Carrender, 469 A.2d at 123; Restatement § 343A)).

"The question of what is a dangerous condition is one of fact which must be answered by the jury." Finn v. City of Philadelphia, 664 A.2d 1342, 1345 (Pa. 1995). So is the question of whether a danger was known or obvious. Carrender, 469 A.2d at 124. "[W]here reasonable minds could not differ as to the conclusion," however, "the[se] question may be decided by the court." Graham v. Moran Foods, Inc., No. 11–239, 2012 WL 1808952, at *3 (E.D. Pa. May 18, 2012) (quoting Carrender, 469 A.2d at 124).

**A. Dangerous Condition**

Defendants argue that Plaintiff fails to establish that there was an unreasonable risk or hazard presented by the placement of the chairs at the Social Security Office. (Mem. Supp. Mot. Summ. J. 5.) In response, Plaintiff presents different theories of how "the design of the [Office] area was negligent." (Pl.'s Mem. Supp. Resp. 4, Doc. No. 20.) Plaintiff thus alleges that: (1) "the space was too small/tight" and did not have "enough space . . . for her to get out"; (2) "the chairs were aligned too closely" to allow for exit between them; (3) "there was not enough space between the counter and the chairs to maneuver"; (4) "the design of the area . . . should have been bigger and better thought out"; and (5) the chairs were "in a state of disrepair, missing parts and in defective conditions." (Id. at 4, 6–7, 9–10.)

Plaintiff never attempted to move the chairs. Nor did Plaintiff testify that she tried to walk between the two chairs but could not do so. Rather, Plaintiff testified that she fell because the space between the counter and the chairs was too small to allow her to maneuver. (Rosati Dep. 116.) Yet, Plaintiff also testified that she had "no problem" entering the cubicle area to sit down, and that, although the space was "tight" between the left-side chair and the partition, there was enough "space to go around." (Id. at 113, 118.)

Plaintiff provides the less than useful expert report of James Rappoport—an architect and interior designer. Remarkably, Rappoport bases his opinion on an erroneous understanding of how Plaintiff fell. (See Rappoport Report 2 ("[Plaintiff] fell backwards as she attempted to get up and out of a chair" after her interview).) Rappoport thus focuses on the right-side chair and whether it was somehow defective. The condition of the chair is beside the point: by her own testimony Plaintiff had already risen from the chair and turned left when she fell. (Rosati Dep. 112–14.) Rappoport offers additional analysis inapposite both to his understanding of how Plaintiff fell and Plaintiff's own description of her fall. For instance, Rappoport opines that the eight-and-a-half-inch space he measured between the left-side chair and the partition "is not sufficient (hip) space for a person to walk within," was "too narrow," and so created "a trip hazard." (Rappoport Report 3, 8.) Yet, this was not where Plaintiff fell or where Rappoport understood she fell. Moreover, this was the same space that Plaintiff had "no problem" navigating on the right side minutes before. (Rosati Dep. 116.) Having described the chairs as "movable," Rappoport also opines that the bottom of the right chair might have scraped against the Office carpet. (Rappoport Report 5–6.) Yet, Rappoport does not opine on the left chair—the chair Plaintiff would have moved if it was too close to the partition or countertop. Rappoport also ignores Plaintiff's testimony that she never tried to move either chair. (See Rosati Dep. 111, 134.)

In these circumstances, there is no dispute as to whether the Office spacing was a condition "from which an inference of negligence would arise." Carter-Butler v. Target Store #2596, No. 15-04030, 2016 WL 8716338, at *3 (E.D. Pa. Feb. 19, 2016) (citing Myers v. Penn Traffic Co., 606 A.2d 926, 931 (Pa. Super. Ct. 1992)) (no dangerous condition where customer tripped over clothing racks that were in a well-lit area and in plain sight). Rather Plaintiff herself testified to just the opposite: she entered into the cubicle space and sat down without difficulty, without even moving either chair. (See Rosati Dep. 118 ("I had no problem.").) Plaintiff testified there was ample space to move around both the left- and right-side chairs. (Id. at 113–15, 118.) Yet, Plaintiff also testified that she *believed* that the narrow space between the left chair and partition (that she had previously negotiated on the right side without difficulty) caused her fall. (See id. at 118 ("I think there wasn't enough space and I got tangled up in the chair and it fell over on me.").) This is not evidence that the arrangement was a dangerous condition giving rise to a negligence claim.

The attached photographs of Beale's area plainly show that it was not "dangerous." Rather, they confirm that, by her own description, Plaintiff had an accident. The "mere occurrence of an accident does not establish negligent conduct." Daniels v. Sears & Sears Roebucks & Co., No. 15-4821, 2016 WL 521205, at *4–5 (E.D. Pa. Feb. 10, 2016) (quoting Martin v. Evans, 711 A.2d 458, 502 (Pa. 1998) (no dangerous condition in slip and fall case where plaintiff testified that the floor was shiny)); Couto-Pressman v. Richards, 63 A.3d 856, 861 (Pa. Commw. Ct. 2013) (there is "no precedent for the proposition that a property owner creates a dangerous condition by the installation of a fixture that has spaces between its component part").

In these circumstances, because "reasonable minds could not differ" as to the existence of a dangerous condition, I will grant summary judgment. See Carrender, 469 A.2d at 124.

7

**B.  Known and Obvious Danger**

In the alternative, assuming *arguendo* that Plaintiff could establish that the Office spacing was dangerous, it was a known and obvious danger and so not a breach of Defendants' duty.

"A danger is deemed to be 'obvious" when 'both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising normal perception, intelligence, and judgment.'" Id. at 123 (quoting Restatement § 343A cmt. b).  "For a danger to be 'known, it must not only be known to exist, but . . . also be recognized that it is dangerous and the probability and gravity of the threatened harm must be appreciated.'" Id. at 124 (quoting Restatement § 343A cmt. b).  Generally, "[t]he location of the accident is the most relevant consideration, because no duty exists if the invitee knows:  (1) the actual conditions; (2) the activities carried on; and (3) the dangers involved in either." Campisi v. Acme Markets, Inc., 915 A.2d 117, 120–21 (Pa. Super. Ct. 2006) (citing Restatement § 343 cmt. e).

"It is hornbook law in Pennsylvania that a person must look where [s]he is going." Graham v. Moran Foods, Inc., No. 11-239, 2012 WL 1808952, at *4 (E.D. Pa. May 18, 2012) (quoting Villano v. Sec. Sav. Ass'n, 407 A.2d 440, 441 (Pa. Super. Ct. 1979)); see also Rogers v. Max Axen, Inc., 16 A.2d 529, 529 (Pa. 1940) ("[W]here one is injured as the result of a failure on h[er] part to observe and avoid an obvious condition which ordinary care for h[er] own safety would have disclosed, [s]he will not be heard to complain.").

Plaintiff easily navigated the spacing when she entered the cubicle area.  She never testified (or even suggested) that she could not see the spacing between the chairs, the partitions, and the countertop while she sat in the area during her interview.  (See, e.g., Rosati Dep. 105, 147–48 (Q: "Did you have some difficulty seeing the chairs?  A: "No."  Q: "Did you have some difficulty seeing the space?"  A: "No.").)  Rather, Plaintiff now argues that she "didn't appreciate the danger"

the spacing presented. (Pl.'s Mem. Supp. Resp. 13.) Plaintiff may not transform her failure to "appreciate" what she could "see" into Defendants' negligence. A reasonable person, having seen the Office's spacing, necessarily would be aware of the dangers presented by walking through the Office if any actually existed. See Carrender, 469 A.2d at 124 (granting summary judgment in slip and fall case where isolated patch of ice in property owner's parking lot was "obvious to a reasonably attentive invitee" and plaintiff "was aware of the ice" because she parked near it); Antolik v. Camelback Ski Corp., Inc., No. 6411 Civil 2011, 2012 Pa. Dist. & Cnty. Dec. LEXIS 182, at *11 (Pa. Ct. Comm. Pleas 2012) (no breach of duty where plaintiff observed the water puddle on which she later slipped and fell; the puddle was "a known condition" with obvious risks).

The purportedly close spacing among the partition, countertop, and chair "would have been readily apparent to a reasonable person 'exercising normal perception, intelligence, and judgment.'" Thomas v. Family Dollar Stores of Pa., LLC, No. 17-4989, 2018 WL 6044931, at *3 (E.D. Pa. Nov. 19, 2018) (quoting Carrender, 469 A.2d at 123–24)). Moreover, a reasonable person would necessarily understand that chairs within a narrow space have legs that can be tripped over. See e.g., Perasso v. Caesars Cove Haven, Inc., No. 3:10-cv-1476, 2012 WL 2121244, at *4 (M.D. Pa. June 12, 2012) ("[T]ripping on a coffee table would be an obvious possibility in proceeding into a dark hotel suit."); Greenbaum v. United States, 366 F. Supp. 26, 31 (E.D. Pa. 1973) ("[A] plaintiff cannot walk blindly or carelessly into a clearly visible object and recover for injuries which resulted from her negligence." (citing Pewatts v. J. C. Penney Co., 356 F.2d 586 (3d Cir. 1968))); Carrender, 469 A.2d at 124; Antolik, 2012 Pa. Dist. & Cnty. Dec. LEXIS 182, at *11.

Plaintiff also fails to present evidence that Defendants "should [have] anticipate[d] the

harm despite such knowledge or obviousness." <u>Carrender</u>, 469 A.2d at 124 (quoting Restatement § 343A). Beale meets with innumerable social security applicants (Beale's is "a very high demand position"). (Beale Dep. 13; Pl.'s Mem. Supp. Resp. 4.) Yet, there is no evidence that an accident like Plaintiff's ever occurred before. Plaintiff's testimony (contradicted by Beale) that Beale told the security guard "the chairs were too close together" is likely inadmissible hearsay, and, in any event, beside the point. (<u>See</u> Rosati Dep. 119–20); <u>Carter-Butler</u>, 2016 WL 8716338, at *2 ("When ruling on a motion for summary judgment, the Court may only rely on admissible evidence." (citing <u>Blackburn v. United Parcel Serv., Inc.</u>, 179 F.3d 81, 95 (3d Cir. 1999))). If Plaintiff believed the chairs were too close, she would have tried to move them. Moreover, Plaintiff testified that she tripped negotiating the space between the countertop and the chairs, not the space between the chairs themselves. (Rosati Dep. 113–14.)

## IV.     CONCLUSION

In sum, the undisputed evidence shows that Plaintiff fell because of her own clumsiness. As there is no evidence of a dangerous condition, she cannot proceed with this negligence action. In the alternative, I conclude that even if there were evidence of a dangerous condition, it was known or obvious to Plaintiff. In these circumstances, Defendants are entitled to summary judgment.

An appropriate Order follows.

**May 15, 2019**                                                        **AND IT IS SO ORDERED.**

*/s/ Paul S. Diamond*
_____
Paul S. Diamond, J.

**APPENDIX**



(See Rappoport Report 3.)



(Id. at 4.)